IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DONALD A. DIGGS,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 11-2404** |
| | * | |
| **DRIVERS, CHAUFFEURS AND** | * | |
| **HELPERS LOCAL UNION No. 639** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

*Pro Se* Plaintiff Donald Diggs sued Defendant Drivers, Chauffeurs and Helpers Local Union No. 639 ("the Union") in Maryland state court for breach of contract related to the alleged improper denial of medical benefits. The Union removed the case to this Court based on federal question jurisdiction under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq*. After the Union filed its Answer the Court issued a Scheduling Order, Diggs never sought any discovery or responded to the Union's discovery requests.[1] On April 26, 2012, the Union filed a Motion for Summary Judgment [Paper No. 19]. For the following reasons, the Motion is **GRANTED**.

I.

Diggs was a member of the Union until March 2011.[2] Under applicable collective bargaining agreements between the Union and one or more of Diggs's employers,[3] Diggs was eligible for health care coverage under the Teamsters Local 639 Employers Health Trust Fund ("the Fund"). The Fund is a separate legal entity administered by the Local 639 Employers'

---

[1] In failing to respond to the Union's requests for admission, Diggs waived any objections he could have asserted. *See* Paper No. 16.
[2] Apparently, Diggs was expelled from the Union for violent and threatening conduct toward fellow members and staff.
[3] The record is silent about the work Diggs performed.

1

Health Trust Board of Trustees ("the Board"). Participating employers appoint half of the trustees on the Board, and the Union appoints the other half. To remain eligible for health benefits under the Fund in any calendar month, Union members must have worked at least 140 hours in the preceding month. If, in any given month, a member works less than the required hours, he may maintain eligibility by paying the resulting shortfall himself—i.e., his employer's hourly contribution rate multiple by 140 minus the number of hours he actually worked. A member may also maintain eligibility if in the six preceding months his employer made contributions on his behalf for at least 840 work hours. Under the applicable collective bargaining agreements, it is the sole responsibility of participating employers to record the number of hours worked by members and to report that number to the Fund. The Fund notifies members by letter if their eligibility is about to expire based on the number of reported hours worked and specifies how much they must pay to maintain eligibility.

In his Complaint, Diggs alleges that the Union failed "to ensure that employer contributions are properly paid and recorded by the Health and Welfare Fund." "As a result," Diggs claims that he and his family were "denied" medical benefits to which they were entitled and asks for reimbursement of out-of-pocket costs for medication and other medical expenses.

The record shows that from January 2011 until Diggs filed suit, his employers failed to report that he had worked 140 hours in the preceding month, or that he had worked at least 840 hours in the preceding six months. The Fund provided Diggs with several notices regarding the possible loss of benefits during that period of time, but he did not make any payments to maintain coverage. When the Fund eventually received corrected employer reports of the hours Diggs worked, it offered him retroactive coverage for eligible health expenses. Diggs, however, did not submit any eligible health expenses to the Fund for reimbursement.

After filing this suit, Diggs ignored his obligations in the litigation process, including failing to respond to any of Defendant's requests for admissions even after the Court ordered him to do so.[4] In his response to Defendant's Motion for Summary Judgment, Diggs admits that the Fund "did pay" his medical bills.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in his favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court, however, must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 522 (alteration in original) (internal quotation marks and citation omitted). The mere existence of a "'scintilla of evidence'" is not enough to frustrate a motion for summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 187 (4th Cir. 1999)). Summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[4] On several occasions Diggs has expressed his desire to "drop the case," even asking Defendant's counsel to "draw up a paper" to that effect.

Although *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), they "must still set forth facts sufficient to withstand summary judgment." *Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002) (citations omitted).

### III.

In his Complaint, Diggs alleges that the Union failed to ensure that employer contributions were paid to and properly recorded by the Fund. Although Diggs styles the suit as a breach of contract claim against the Union, it is well-established that claims that require interpretation of a collective bargaining agreement or implicate a union's duty of fair representation are preempted by federal law. *See Taylor v. Giant Food, Inc.*, 438 F. Supp. 2d 576, 581-84 (D. Md. 2006). Under this body of federal law, the Union, as a labor organization pursuant to the NLRA, has a duty of fair representation "'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 73 (1989) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). Diggs's claim must therefore be treated as a claim for breach of the duty of fair representation.[5]

A union breaches its duty of fair representation only "if its conduct toward any of its members is 'arbitrary, discriminatory, or in bad faith.'" *Jeffreys v. Commc'ns Workers of America, AFL-CIO*, 354 F.3d 270, 274 (4th Cir. 2003) (quoting *Vaca*, 386 U.S. at 190). Mere negligence, even in the enforcement of collective bargaining agreements, does not constitute a breach of the duty of fair representation. *Rawson*, 495 U.S. at 372-73. Union actions are deemed arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air

---

[5] Diggs points to no other obligation the Union might owe him.

*Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citation and internal quotation marks omitted). While arbitrariness is an objective inquiry, "whether [the Union] acted discriminatorily or in bad faith depends on the subjective motivation of the [U]nion's officials." *Jeffreys*, 354 F.3d at 275 (citing *Thompson v. Aluminum Co. of America*, 276 F.3d 651, 658 (4th Cir. 2002)).

Diggs's Complaint simply states that the Union "failed to ensure that employer contributions are properly paid and recorded by [the Fund]." The record, however, provides no indication that the Union has such a duty. No evidence suggests that the Union is charged with policing employers' compliance with *their* obligation to report the number of hours worked by Union members to the Fund for purposes of determining eligibility. The Union also has no evident responsibility to oversee the Fund to ensure that it correctly documents employer contributions and provides medical coverage. The fund is administered by a separate entity, the Board.[6] Even if the Union has a duty to "ensure that employer contributions are properly paid and recorded," Diggs has proffered no evidence to establish that the temporary denial of medical benefits was in any way the result of an action or omission by the Union. Moreover, there is no evidence that Diggs ultimately suffered any harm; he conceded that the Fund paid his medical expenses, and he never submitted any bills to the Fund for retroactive reimbursement. Diggs, in short, cannot show that the Union acted arbitrarily.

Given the total lack of evidence establishing that the Union had a responsibility to oversee employer reporting to the Fund or had anything to do with the temporary lapse in Diggs's medical coverage, there is no indication of the Union's "animosity or personal hostility" toward Diggs. *See id*. at 275-76 (upholding finding that the union did not act discriminatorily or in bad faith because there was nothing in the record indicating its leaders were motivated by

---

[6] The fact that the Union appoints half the trustees of the Board is simply too attenuated a connection to establish any duty on the party of the Union itself to Fund beneficiaries.

animus against plaintiffs).  Without any proof of ill-will, Diggs cannot establish that the Union acted discriminatorily or in bad faith, and the Union is entitled to judgment as a matter of law.

**IV.**

For the foregoing reasons, the Court **GRANTS** the Union's Motion for Summary Judgment [Paper No. 19].  Final Judgment will be entered in favor of the Union and the case will be **CLOSED**.

A separate Order will **ISSUE**.

                                                    /s/
                                **PETER J. MESSITTE**
                        **UNITED STATES DISTRICT JUDGE**

**August 28, 2012**